**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANDREW WYLIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02593-TLP-tmp |
| v. | ) | |
| | ) | JURY DEMAND |
| FLOYD BONNER, Shelby Co. Sheriff and | ) | |
| KIRK FEILDS, Chief Jailer, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE, DENYING
INJUNCTIVE RELIEF, MODIFYING THE DOCKET, DENYING MOTION FOR
APPOINTMENT OF COUNSEL, DENYING MOTION TO COMPEL PRODUCTION
OF RECORDS, DENYING MOTION REQUESTING SERVICE OF COMPLAINT, AND
GRANTING LEAVE TO AMEND**

In August 2020, Plaintiff Andrew Wylie[1] sued pro se under 42 U.S.C. § 1983. (ECF No. 1.)  And the Court granted him leave to proceed in forma pauperis and assessed the $350 filing fee. (ECF No. 4.)  Plaintiff then moved for appointment of counsel, to compel production of his medical records, and for the United States Marshal to serve the complaint. (ECF Nos. 5–7.)

Plaintiff's allegations arise from his confinement at SCCJC during the ongoing COVID-19 pandemic. (ECF No. 1.)  Plaintiff sues as Defendants Shelby County Sheriff Floyd Bonner, et al. and Chief Jailer Kirk Fields, et al. (*Id*. at PageID 2.)  And based on Plaintiff's filings, the Court respectfully **DIRECTS** the Clerk to modify the docket to add as Defendants: (1) WellPath, the Shelby County Medical Service Provider; and (2) Shelby County, Tennessee.

---

[1] The State of Tennessee has custody of Plaintiff and is housing him at the Shelby County Criminal Justice Center (SCCJC) in Memphis, Tennessee.  The State has assigned him number 20102001.

Plaintiff asks this Court to release him from incarceration on his own recognizance "or some alternative to pretrial detention." (*Id.* at PageID 22.)[2] He also seeks $500,000 compensatory damages from each Defendant. (*Id.*) This Order screens Plaintiff's complaint under 28 U.S.C. § 1915, to determine whether any of his claims may move forward.

## FACTUAL BACKGROUND

To begin, Plaintiff alleges that SCCJC has "failed to provide the necessary safeguards such as social distancing, hand sanitizer, [and] antibacterial soaps" to manage COVID-19 at the facility. (*Id.* at PageID 2.) In April 2020, he requested that SCCJC test him for COVID-19 (ECF No. 1-2 at PageID 50) "due to his age and medical chronic conditions." (ECF No. 1 at PageID 4.) But SCCJC rejected his request.[3] (*Id.*; *see also* ECF No. 1-2 at PageID 46, 50.) SCCJC tested Plaintiff on June 22, 2020, and his COVID-19 results came back positive. (ECF No. 1 at PageID 7–8.) SCCJC personnel moved him to "a quarantined pod," and in describing that situation he stated, "I have not received any medical attention at all [and] . . . [am] forced to

---

[2] Plaintiff argues that he is "a non-violent detainee of limited means, whose bond is excessive at $50,000 for a Class E felony of forgery and I.D. theft." He claims the state has incarcerated him at SCCJC "since March 5, 2018 and has yet to be tried." (ECF No. 1 at PageID 10.)

[3] Plaintiff appends to his complaint "a sworn declaration of Dr. Jamie Meyer." (ECF No. 1 at PageID 5–6.) He argues that it shows the heightened risk of contracting COVID-19 in correctional facilities. (*Id.*) The document seems to be an expert witness report by Dr. Meyer in a different lawsuit. (ECF No. 1-1 at PageID 24–45). He also appends to his complaint extracts from what seem to be another inmate's brief filed in a different lawsuit (the Extracts). Those extracts purport to rely on Dr. Meyer's report to argue COVID-19's "threat to the Jail population and the community." (ECF No. 1 at PageID 9, 11–21; *see also id.* at PageID 21 (crossing out an unidentified inmate's name and inserting "Plaintiff").) Assuming Plaintiff properly relies on Dr. Meyer's declaration, the Court is unconvinced that the declaration bolsters his claims. Namely, Dr. Meyers' report details the dangers of Covid-19 *spreading* in prisons. (*see* ECF No. 1 at PageID 12.) Here, Plaintiff has already caught the virus and apparently recovered. (*See id.* at PageID 7–8.) Furthermore, because Plaintiff has not submitted or signed the Extracts as his own pleadings in compliance with the Federal Rules of Civil Procedure, the Court also does not make any rulings about the Extracts' content.

purchase over-the-counter meds like cough drops, ibuprofen, and Gatorade from the commissary." (*Id*. at PageID 8; *see also* ECF No. 1-2 at PageID 47–49.)

Plaintiff contends that Bonner "knew about the risk of the spread of COVID-19 in his jail." (ECF No. 1 at PageID 3; *see also id*. at PageID 6 ("[B]oth Defendants had been exposed to information concerning the risk of COVID-19 in [SCCJC] and the need to test everyone.").) He claims that WellPath, SCCJC's Medical Service Provider, refused to test him "when they knew about the substantial risk to expos[ure] and serious harm." (*Id*. at PageID 4–5.) He states that he "is sick with COVID-19 and struggling to breathe, with severe pain and cough and is quarantined." (*Id*. at PageID 10.) He alleges that Bonner and Fields "have not ordered any relief or comforts such as cool ice water, vitamin C, or Gator-Aid to relieve the symptoms." (*Id*.)

## LEGAL STANDARD

### I.    Pleading Standard

The Court has to screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

As to step one, in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v.*

*Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not

assume that conclusory allegations are true, because they are not "factual," and all legal

conclusions in a complaint "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

And Federal Rule of Civil Procedure 8 only requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 555 n.3.  But it also

requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement

to relief."  *Id.*

Even so, Courts screening cases will accord slightly more deference to pro se complaints

than to those drafted by lawyers.  "*Pro se* complaints are to be held 'to less stringent standards

than formal pleadings drafted by lawyers,' and should therefore be liberally construed."

*Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  That

said, pro se litigants are not exempt from the requirements of the Federal Rules of Civil

Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*,

415 F. App'x 608, 612–613 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for

failure to comply with "unique pleading requirements" and stating "a court cannot create a claim

which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted).

## II.     Requirements To State a Claim Under 42 U.S.C. § 1983

Plaintiff sues under 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must

allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the

United States, and (2) that a defendant caused harm while acting under color of state law.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  For his claims to succeed, Plaintiff must

satisfy these requirements.

## ANALYSIS

Asserting claims under § 1983, Plaintiff requests both: (1) injunctive relief through release from custody; and (2) monetary relief.  (ECF No. 1 at PageID 22.)

## I.  Eighth Amendment Claim Seeking Injunctive Relief for Release From SCCJC

The Court will analyze Plaintiff's request for injunctive relief[4] based on the Eighth Amendment.  Plaintiff argues that Defendants violated his Eighth Amendment rights with unconstitutional conditions of confinement at SCCJC related to COVID-19, which can be remedied "only by release."  (ECF No. 1 at PageID 3 & 8.)  But to be clear, the relief he seeks is unavailable under § 1983.

The proper vehicle for seeking release from confinement is a habeas corpus petition.[5]  *See Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973)); *see also Mass v. CoreCivic, Inc.*, No. 20-0798, 2020 WL 5816232, at *4 (M.D. Tenn. Sept. 30, 2020) (citation omitted).  A prisoner seeking release must do so "through a writ of habeas corpus, not through § 1983."  *Wershe v. Combs*, 763 F.3d 500, 504

---

[4] Ordinarily, the Court considers requests for injunctive relief using four factors: (1) whether the claimant has demonstrated a strong likelihood of success on the merits, (2) whether claimant will suffer irreparable injury, (3) whether granting the stay will cause substantial harm to others, and (4) whether the stay serves the public interest.  *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir, 2007).  But here, the Court finds it unnecessary to analyze each factor because Plaintiff has requested relief which is unavailable.

[5] The Court also recognizes that a prisoner may move for compassionate release under 18 U.S.C. § 3582(c).  But even if Plaintiff intended this Court to consider his claims as an application for compassionate release, his claims still do not warrant relief.  By statute, a federal court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  That rule comes with a few exceptions, one of which permits compassionate release.  Section 3582(c)(1)(A)(i) allows a federal sentencing court to reduce a *federal* defendant's sentence based on "extraordinary and compelling" reasons.  Because Plaintiff is a state prisoner awaiting resolution of state charges, compassionate release is not an available remedy for him.

(6th Cir. 2014).  And here, the Court notes that even if Plaintiff had filed a habeas corpus petition, his requested relief—release—would almost certainly still be unavailable.

To explain, the Supreme Court has discussed but not yet recognized that an Eight Amendment conditions of confinement claim can justify habeas corpus relief.  *See Preiser*, 411 U.S. at 499.  For example, in *Ziglar v. Abbasi*, the claimants alleged the defendants held them in tiny, empty, constantly lighted cells for over 23 hours per day without basic hygiene and subjected them to physical abuse.  137 S. Ct. 1843, 1863 (2017).  Even so, the Supreme Court did not find it was such a case for habeas relief "to remove the restraints making the custody illegal."  *Id*.  The *Abbasi* decision "is telling of just how extraordinary the case must be for habeas jurisdiction to lie before a prisoner may be released from lawful custody based on a condition of confinement."  *Wragg v. Ortiz*, No. 20-5496, 2020 WL 2745247, at *19 (D.N.J. May 27, 2020).

Yet, the Court recognizes that Plaintiff's concerns about his COVID-19 diagnosis are justifiable.  Such fears permeate American society.  But just because he has legitimate concerns about his health does not mean he has a viable lawsuit here.  And this result fits with other decisions in this jurisdiction about injunctive relief related to COVID-19 claims.  *See Busby v. Bonner*, No. 20-2359, ECF No. 124 at PageID 2811, 2813–14, 2815 & 2820 (W.D. Tenn. Aug. 7, 2020) (citing *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) ("Our cases warn that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success.") (other citations omitted)).

Overall, because Plaintiff requests relief which is not available under § 1983, the Court finds that he fails to state a claim for injunctive relief under the Eighth Amendment.

### III.   Claims for Monetary Damages

#### a.   Official Capacity Claims / Claims Against Shelby County

Plaintiff does not specify whether he sues Defendants in their official or individual capacities.  The Sixth Circuit requires a plaintiff to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials."  *Wells*, 891 F.2d at 592.  "Absent a specification of capacity, it is presumed that a state official is sued in his official capacity."  *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593).

The Court treats the official capacity claims in Plaintiff's complaint as claims against Defendants' employer, Shelby County.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Courts may hold Shelby County liable *only* if Plaintiff sustained his injuries under an unconstitutional custom or policy.  *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 694 (1978). This is known as municipal liability.

To show municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphasis in original)). Plaintiff does not allege that Defendants deprived him of a right because of a Shelby County policy or custom.  He does not allege that any County policy or custom caused SCCJC to reject

his COVID-19 testing request.  He instead seeks relief based on his general allegations about SCCJC.  He, therefore, does not state a claim against Shelby County or against any Defendants in their official capacity.

> ### b.     Eighth Amendment Claim for Compensatory Damages

The Court construes under the Eighth Amendment Plaintiff's allegations of "cruel and unusual punishment" (ECF No. 1 at PageID 8–9), denial of "humane conditions of confinement" (*id*. at PageID 4 & 7), and "deliberate indifference" (*id*. at PageID 3–5) related to COVID-19 testing and "necessary safeguards" (*id*. at PageID 2).  *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).  Under the Eighth Amendment, prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The deprivation must be extreme to make out a conditions of confinement claim.  And "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations and citations omitted).

The Sixth Circuit has explained the law in this jurisdiction for conditions of confinement claims:

> In certain extreme circumstances, the totality itself may amount to an [E]ighth [A]mendment violation, but there still must exist a specific condition on which to base the [E]ighth [A]mendment claim.  We believe such conditions "considered alone or in combination [with other conditions]," must amount to a deprivation of "life's necessities," before a violation of the [E]ighth [A]mendment can be found"
>
> . . . .

> . . . [A] specific deprivation of one or more identifiable human needs must be
> established in order to prove an Eighth Amendment violation, . . . [and] the plaintiff
> must show "a culpable state of mind on the part of [the defendant] prison officials."

*Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9–10 (6th Cir. Aug. 6,
1991) (internal citations omitted).  "It is thus settled that Eighth Amendment claims based on
prison conditions have both an objective component (denial of … 'the minimal civilized measure
of life's necessities'), and a subjective component ('deliberate indifference')."  *Id.* at *10
(internal citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires that the deprivation be "sufficiently serious."  *Farmer*,
511 U.S. at 834.  A prisoner must show that he "is incarcerated under conditions posing a
substantial risk of serious harm," *id.*; *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005),
or that Defendants deprived him of the "minimal civilized measure of life's necessities."  *Wilson*,
501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525
(6th Cir. 2004.  The subjective component requires that jail officials acted with requisite
intent—*i.e.*, had a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834; *see also
Wilson*, 501 U.S. at 302–03 (explaining plaintiffs must show that prison officials acted with
"deliberate indifference" to a substantial risk that the prisoner would suffer serious harm);
*Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009).  A prison official must
subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that
risk.  *Farmer*, 511 U.S. at 837.

Plaintiff alleges that "400 or so estimated inmates here [at SCCJC] were tested for
COVID-19 and well over 100 of those people tested positive."  (ECF No. 1 at PageID 2.)  He
also states that three officers in his SCCJC "dorm" were "quarantined at one time for COVID-19
or expos[ure]."  (*Id.* at PageID 3.)  He states that he is 55-years-old and has "asthma and PTSD,"

which place him at a higher risk for contracting the virus.  (*Id.* at PageID 2 & 4; ECF No. 1-2 at PageID 46.)

The novel coronavirus and the risks attendant upon contracting it are perhaps serious enough under the Eighth Amendment's objective prong.  Even so, Plaintiff fails to allege the subjective component sufficiently as to each Defendant.

As to Bonner and Fields, Plaintiff suggests that they were constitutionally deficient in trying to manage COVID-19 risks at SCCJC in general.  (ECF No. 1 at PageID 2–4.)  This does not show that they subjectively knew of a risk in Plaintiff's case and then disregarded it.  In fact, by Plaintiff's own admission, Fields and Bonner quarantined him in an isolated pod once he received the positive COVID-19 result.  (*Id.* at PageID 8.)  That action deflates Plaintiff's claim of their deliberate indifference.  Nor does Plaintiff show that testing in fact would have kept him from contracting the virus; that testing was available to SCCJC in April 2020 during the early stages of the pandemic; or that social distancing among inmates was feasible in April 2020.

Similarly, Plaintiff does not show that sanitizer and anti-bacterial soap were available to SCCJC at the pertinent times, when such items were scarce nationally.  Indeed, the Eighth Amendment does not require perfection on the part of prison officials.  *See United States v. Cato*, No. 14-315-01, 2020 WL 4193055, at *1 n.1 (E.D. Pa. July 21, 2020).  Plaintiff suggests that "we might well infer" Bonner and Fields knew about his personal risks, just because they had general knowledge about coronavirus.  (ECF No. 1 at PageID 6.)  But that does not show their "deliberate indifference" to a substantial risk that Plaintiff would suffer serious harm.

As to WellPath, Plaintiff contends that "the Medical Service Provider simply refused to test me when they knew about the substantial risk to expos[ure] and serious harm."  (*Id.* at PageID 4–5.)  If WellPath "performs the traditional state function of operating a prison," it then

"acts under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).[6]  To state a claim against WellPath, Plaintiff has to allege that his "'constitutional rights were violated and that a policy or custom' of [WellPath] 'was the moving force behind the deprivation of [his] rights.'" *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

But Plaintiff fails to state a claim against WellPath here because he does not show that WellPath had a "policy or custom" that was the moving force behind any constitutional violation.  He does not describe any WellPath policy or custom about testing SCCJC inmates for COVID-19 at the relevant times.  Indeed, the novel coronavirus's outbreak in the U.S. was in its earliest stages in April 2020; nationally, organizations were still beginning to develop COVID-19 policies and customs.  So based on the record here, Plaintiff fails to show the Eighth Amendment's subjective prong for WellPath.

As to Shelby County, Plaintiff's claims suffer from the same defect as the claim against WellPath.  He does not allege that a Shelby County policy or custom deprived him of a right.  He instead seeks relief based on his general allegations about SCCJC.  (*See* ECF No. 1 at PageID 4–7 & 9.)

For these reasons, Plaintiff fails to state an Eighth Amendment conditions of confinement claim for relief as to any of the Defendants.

---

[6]  The Court will assume under a liberal construction of the complaint that WellPath is an outside organization that contracts with SCCJC to provide inmate health service.

IV.     **Claim of Inadequate Medical Care**

Plaintiff claims that he has "not received medical attention at all" since his June 22, 2020, positive COVID-19 test.  (*Id*. at PageID 8.)  He further alleges that he is "being forced to have to purchase over-the-counter meds like cough drops, ibuprofen, and Gatorade from [the] commissary." (*Id*.)  He adds that he is "struggling to breathe, with severe pain and cough and i[n] quarantine.  [Floyd and Bonner] have not ordered any relief or comforts such as cool ice water, vitamin C, or Gatorade to relieve the symptoms." (*Id*. at PageID 10.)

Plaintiff's claim of inadequate medical care also falls under the Eighth Amendment. *See generally Wilson*, 501 U.S. at 297.  And under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  That said, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

In the context of inadequate medical care claims, the Eighth Amendment's objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Id.* at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)); *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

And in the medical care context, the Eighth Amendment's subjective component requires that jail officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302–03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez*, 555 F.3d at 550. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

Plaintiff's claims that Defendants did not provide "cool ice water, vitamin C, or Gatorade" amount to just a difference of opinion about the course of treatment for his coronavirus symptoms. He does not claim that Defendants altogether denied him water, other fluids, or sustenance. Furthermore, where a dispute is over medical care's adequacy, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Simply because Plaintiff thinks SCCJC personnel should bring him ice water or Gatorade does not demonstrate a constitutional deprivation.

Plaintiff's claims about having to purchase "over-the-counter meds like cough drops, ibuprofen, and Gatorade from [the] commissary" might suffice for an Eighth Amendment claim if he could establish that he was unable to afford pain medication for a serious medical need and he suffered unnecessary pain as a result of being denied free medication. *See id.* at 860. The record here lacks any showing of insufficient funds to buy medication in Plaintiff's inmate trust account during the pertinent period. *Cf. Bailey v. Carter*, 15 F. App'x 245, 250 (6th

Cir. 2001) (finding inmates' Eighth Amendment claim meritless where they alleged they had to pay for medication, not that they were denied medication).

Plus Plaintiff does not show that Defendants had a "sufficiently culpable state of mind" and acted with "deliberate indifference" about COVID-19 treatment or medication purchases. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302–03. For example, he does not allege that vitamin C and Gatorade are, in fact, available at SCCJC and that Defendants deliberately denied them to Plaintiff to worsen or prolong his symptoms. In addition, Plaintiff's criticisms that he "can't practice social distancing" in SCCJC (ECF No. 1-2 at PageID 48–49) and his criticisms that "the staff won't come around me" (*id*. at PageID 48) are internally inconsistent. His factual allegations suggest that Defendants, by quarantining him, gave him precisely what he desired— they did something "about [the] social distancing." (ECF No. 1 at PageID 2 & 8.) The complaint does not permit a plausible inference of Defendants' culpable state of mind.

For these reasons, Plaintiff fails to state a claim for inadequate medical care.

## V.     Claim of Inadequate Grievance Procedure

Plaintiff alleges that he has submitted grievances about his housing assignments, but "no response / nothing was done." (ECF No. 1 at PageID 2.) He does not allege however an arbitrary denial of access to SCCJC's grievance procedure.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"). Even if the constitution guaranteed a grievance system, Plaintiff has not shown how any Defendant's

conduct related to the grievance process affected his "ability to bring his claim before any court." *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874–75 (6th Cir. 2011) (citation omitted).

What is more, a failure to take corrective action in response to an inmate grievance does not show enough personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Plaintiff's contentions about his grievances fail to state a claim for relief.

## VI.     Claim of Denial of Access to the Courts

One of Plaintiff's Inmate Grievance Forms, as attached to the complaint, states: "the counselor will not run off legal copies or give me a paralegal access form which denies me access to the court." (ECF No. 1-2 at PageID 47.) The complaint itself does not make similar allegations. (*See* ECF No. 1.) In any event, the Court will liberally construe Plaintiff's pro se pleading and consider it a claim of denial of access to the courts.

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. Appointment of counsel can be a valid means of satisfying the constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts. *See, e.g.*, *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004).

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019).

The Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). A claimant shows an actual injury only where he allegedly lost a nonfrivolous, arguable claim. *Id.* "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

The right of access to courts has limits. "The tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original). A plaintiff's right of access to the courts in his criminal case is therefore satisfied if he had help from counsel for his criminal trial. *See United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004) (citing *United States v. Smith*, 907 F.2d 42, 44 (6th Cir. 1990)).

As to Plaintiff's contentions about "the counselor not run[ning] off legal copies" (ECF No. 1-2 at PageID 47), he does not state that lack of photocopies hindered his efforts to pursue a

16

nonfrivolous legal claim.  He does not describe or otherwise address that cause of action in which his putative lost remedy was frustrated by not having photocopies.  As to his contention about "paralegal access" (*id.*), his allegation is similarly deficient.  He does not contend that the lack of paralegal access in fact hindered his efforts to pursue a nonfrivolous legal claim.  Nor does he describe a causally related actual injury from it.

For these reasons, Plaintiff fails to state a claim for deprivation of the constitutional right of access to the courts.

## VII.   Claims Against "Et Al."

Plaintiff lists as Defendants: "Sheriff Bonner, et al." and "Chief Jailer Kirk Fields, et al." (ECF No. 1 at PageID 1 & 2.) This lack of specificity in his pleading warrants dismissal of his claims against those parties.

Federal Rule of Civil Procedure 8(a)(2) sets forth a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n. 1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  It is essential that a plaintiff's pleading attribute factual allegations to particular defendants.  *Id*. at 544 (holding that, to state a claim, a plaintiff has to make enough allegations to give a defendant fair notice of the claim).  If a complaint fails to link a specific defendant to particular misconduct, the complaint is subject to dismissal, even under the liberal constructions afforded to pro se complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000).

For a plaintiff to provide "fair notice" of his claims against putative parties, Rule 8 requires that he identify the defendant(s) who he feels are responsible for constitutional deprivations. Generic identifiers such as "others," without surname specificity, cannot link a specific defendant to offending actions. Such vagaries deprive intended defendants of notice of a plaintiff's claims to enable them to offer and prepare a defense. A person cannot be on notice of a litigant's claims if that person does not, in the first instance, even know he is an intended party to the lawsuit.

And in order to state a claim for relief under § 1983, Plaintiff must link a named defendant with some affirmative act or omission that shows a violation of Plaintiff's federal rights. *See* 42 U.S.C. § 1983 (requiring that there be an actual connection or link between the actions of the defendants and the deprivation plaintiff allegedly suffered).

Plaintiff's use of "et al." falls short of the minimal pleading standards of Federal Rule of Civil Procedure 8 and the requirements for § 1983 claims. Thus, the Court **DISMISSES** all claims against "et al." (*see* ECF No. 1 at PageID 1 & 2).

In conclusion, for all the reasons explained above, none of the claims in Plaintiff's complaint state a claim for relief under § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1). The Court **DISMISSES** the complaint **WITHOUT PREJUDICE**.

## <u>MOTION FOR APPOINTMENT OF COUNSEL</u>

Plaintiff moved for appointment of counsel alleging that he needs counsel because of his "lack of legal training and the complexity of this suit and the lack of access to legal research material." (ECF No. 5 at PageID 61.) The Court disagrees.

Under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." But "[t]he appointment of counsel in a civil proceeding is not a

constitutional right." *Lanier v. Bryant*, 332 F. 3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (no constitutional right to counsel in a civil case). Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Id.* at 606.

"In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* (internal quotation marks and citations omitted). Appointment of counsel is not appropriate when a pro se litigant's claims are baseless or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)).

Plaintiff does not identify any "exceptional circumstances" that warrant appointing counsel. Plaintiff has shown himself to be able to litigate this case on his own. (*See*, *e.g.*, ECF Nos. 1, 2 & 5–7.) The Court, therefore, **DENIES** Plaintiff's motion for appointment of counsel. (*see* ECF No. 5.)

## MOTION TO COMPEL PRODUCTION OF MEDICAL RECORDS

Plaintiff moved for WellPath's production "of [Plaintiff's] medical records … includ[ing] the results of a COVD-19 test conducted on July 22, 2020 by the Shelby County Health Department and not limited to any and all other medical historical information held by WellPath, Inc." (ECF No. 6 at PageID 64.)

Plaintiff must pursue his discovery requests from WellPath under the Federal Rules of Civil Procedure—and not through a Court order. *See*, *e.g.*, Fed. R. Civ. P. 34 ("A party may serve on any other party a request . . . to produce . . . any designated documents or electronically

stored information."). Even so, this action is not in the discovery stage. And there is nothing in the record suggesting that Plaintiff has ever served any discovery requests upon WellPath. Thus, the Court cannot compel a discovery response from WellPath.

The Court **DENIES** Plaintiff's motion to compel. (*see* ECF No. 6.)

## AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a sua sponte dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). But courts need not grant leave to amend where an amendment cannot cure the deficiency. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). But here, the Court finds that Plaintiff should have a chance to amend his complaint.

## CONCLUSION

For the reasons explained above, the Court **DISMISSES THE COMPLAINT WITHOUT PREJUDICE** for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1). The Court **DENIES** Plaintiff's request for injunctive relief in the form of release from custody.

But the Court **GRANTS** Plaintiff leave to amend the complaint. Any amendment to Plaintiff's claims must be filed within thirty (30) days after this Order. And the Court advises

Plaintiff that an amended complaint will supersede the original complaint and must be complete by itself without reference to the prior pleadings.  Plaintiff has to sign the amended complaint, identify any exhibits by number in the text of the amended complaint, and then attach them to the complaint.  Plaintiff has to state each claim for relief in a separate count and must identify each Defendant sued in that count.  If Plaintiff fails to file an amended complaint within the time specified, the Court will assess a strike under 28 U.S.C. § 1915(g) and enter judgment.

The Court also **DENIES** Plaintiff's motion for appointment of counsel (*see* ECF No. 5) and motion for production of medical records (*see* ECF No. 6).

And the Court **DENIES** Plaintiff's "motion requesting a case number and service of complaint."  (ECF No. 7.)  Plaintiff's request for the case number is moot, as Plaintiff has shown that he already possesses that information (*see*, *e.g.*, ECF No. 6 at PageID 64 (listing docket number 20-cv-2593)).  The Clerk also mailed to Plaintiff the August 19, 2020 Order (ECF No. 4), bearing this case's number, two days after the Court entered it on the docket.  And finally, service of the complaint is not warranted now because the Court is dismissing Plaintiff's pleading for failure to state a claim.

**SO ORDERED**, this 26th day of January, 2021.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE